```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ESMAIL ROSS, Father and Natural Guardian of
MICHELLE ROSS, an Infant,

                                      Plaintiff,                MEMORANDUM OPINION
                                                                AND ORDER

                                                                CV -03-4091 (ETB)
              -against-


JC PENNEY CORPORATION, INC., f/k/a
J.C. PENNEY COMPANY and SCHINDLER
ELEVATOR CORPORATION,


                                      Defendants.
------------------------------------------------------------------------X
JC PENNEY CORPORATION, INC.  f/ka/
J.C. PENNEY COMPANY,
                                      Cross-Claimant,



              -against-



SCHINDLER ELEVATOR CORPORATION,

                                      Cross-Defendant.
------------------------------------------------------------------------X
```

Plaintiff Michelle Ross ("plaintiff" or "Ross"), by her parent and natural guardian Esmail Ross, commenced the instant negligence action on July 15, 2003, in the Supreme Court of the State of New York, County of Nassau. The action was removed from state court on August 20, 2003, and accepted in federal court based on diversity of citizenship.

1

The action arises out of an accident that occurred at a JC Penney store owned by defendant JC Penney Corporation, Inc. ("JC Penney"), and located at the Green Acres Mall in Valley Stream, New York. Plaintiff Michelle Ross alleges that she was injured when her hand became caught in an escalator in the store. Presently before the court are three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Both defendants seek summary judgment against the plaintiff, asserting that no triable issues of fact exist with respect to any of plaintiff's claims. Additionally, defendant JC Penney moves for summary judgment on its cross-claim for indemnity over and against defendant Schindler, based on negligence and contract theories. Defendant Schindler opposes the portion of JC Penney's motion which seeks summary judgment on this cross claim.

## FACTS

At the time of the accident in 1995, plaintiff Michelle Ross was two years old. (Dep. of Jacklin Ross ("Jacklin Ross Dep."), Nov. 19, 2003, at 7.) According to the plaintiff's mother, Jacklin Ross ("Ross"), she and her daughter approached the "down" escalator together. (Id. at 10.) As they got on the escalator, Ross testified that she was holding her daughter's left hand with her own right hand, and that her daughter's right hand was holding on to the handrail of the escalator. (Id.) Ross further testified that when they reached the bottom of the escalator, she turned to the left and her daughter jerked her hand away. (Id. at 11.) She testified that one to two seconds later, she heard her daughter scream, and turned to see her daughter screaming and crying. (Id.) She stated that at that point, she realized her daughter's hand was stuck in the handrail, and she pulled her daughter's hand out. (Id. at 17.) Specifically, she testified that her daughter's hand was stuck where the "rubber part goes in," and that the escalator kept going while her daughter's hand was in that space (the "handrail inlet"). (Id.) She testified that her daughter's hand was

2

bleeding when she pulled it out, and that immediately after the incident she took her daughter to the pediatrician, who treated the injury with ointment and a soft cast. (Id. at 25.)

The plaintiff, Michelle Ross, testified that at the time of the incident she was holding her mother's right hand with her left hand, and that her right hand was on the handrail when they got to the bottom of the escalator. (Dep. of Michelle Ross ("Pl.'s Dep."), June 4, 2004, at 13.) She testified that her hand got caught at the bottom of the escalator, where the handrail goes back inside the escalator, and that her mother pulled her hand out. (Id. at 9, 13.)

The plaintiff's expert states that devices have existed since 1946 which force an electrical shutdown on an escalator when an object becomes trapped between the moving handrail and the handrail inlet. (Expert Report of Patrick A. Carrajat ("Carrajat Report"), dated March 19, 2004, at unnumbered 2.) There is no dispute that the escalator was installed either in 1961 or sometime prior, and that the escalator would have been subject to either the 1955 or 1960 A17 safety code. (Dep. of Pl.'s Expert Patrick A. Carrajat, June 8, 2004, at 13.)

Jeff McGrory, the account representative for Schindler, testified that the escalator in question was a "pre-modular" escalator which was not equipped with a handrail inlet device to shut off power if an object became caught between the moving handrail and inlet opening. (Deposition of Jeff McGrory ("McGrory Dep."), April 29, 2004, at 18.) He further testified that as of 1995, such a protective device could not be retrofitted or installed on the escalator in question, because no such upgrade was available. (Id. at 19-20.)

In support of its motion for summary judgment against the plaintiff, defendant JC Penney denies that it had any actual or constructive notice of any alleged problem with the escalator in question prior to this occurrence. (Levien Affidavit in Support ("JC Penney Aff."), dated November 5, 2004, at ¶ 17.) JC Penney states that the escalator in question was in full compliance

with all applicable codes both at the time of its installation and at the time of the incident at issue. (Id.) Additionally, JC Penney states that the escalator could not have been retrofitted with any safety device which might have prevented this occurrence. (Id.)

In support of its motion for summary judgment on its cross claim for indemnity over and against defendant Schindler, JC Penney contends that pursuant to its contract with defendant Schindler, defendant Schindler was responsible for the maintenance of the subject escalator, and for discovering and repairing any alleged defects in the escalator.

Defendant Schindler acknowledges that it was responsible for the maintenance of the escalator in question at the time of the incident. (O'Reilly Affirmation in Support ("O'Reilly Aff. in Supp."), dated Oct. 26, 2004, at 9.) However, Schindler argues that it did not breach a legal duty owed to the plaintiff because the escalator in question complied with all requirements of the Escalator Safety Code at the time of installation and at the time of the accident. (Id. at 14.) Additionally, defendant Schindler disputes JC Penney's interpretation of the contract, and argues that although Schindler was responsible for the maintenance of the escalator, it was not responsible for making safety tests or installing new attachments, and therefore, JC Penney is not entitled to indemnification. (O'Reilly Aff. in Partial Opposition to Co-Defendant's Motion for Summary Judgment ("Schindler Opp'n to Indemnification"), at 2-3.)

DISCUSSION

I. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to establish the lack of any factual issues. See id. The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing the summary judgment motion must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

By its terms, Rule 56 does not require that a trial judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

II.     Prima Facie Case of Negligence Under New York Law

When a federal court sits in diversity jurisdiction, which is predicated on "diverse citizenship of the parties and the sufficiency of the amount in controversy," it must apply the law of the state in which it sits. Mehra v. Bentz, 529 F.2d 1137, 1138 (2d Cir. 1976) (relying on Erie v.

5

Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)). Here, the federal court sitting in the Eastern District of New York must apply New York law.

Under New York law a prima facie case of negligence is established if "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered damage as a proximate result of that breach." Stagl v. Delta Airlines, Inc., 52 F.3d 464, 467 (2d Cir. 1995) (citing Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)). "It is fundamental that defendants may be liable for failure to correct conditions of which they had knowledge or 'failure to use reasonable care to discover and correct a condition whey [they] ought to have found.'" Tashjian v. Strong & Associates, 639 N.Y.S.2d 507, 225 A.D.2d 907, 639 N.Y.S.2d 507 (N.Y. App. Div. 3d Dep't 1996) (citing Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 559, 347 N.Y.S.2d 22, 300 N.E.2d 403 (N.Y. 1973)).

III.  JC Penney's Motion for Summary Judgment

In its moving papers, JC Penney argues that it did not breach the duty owed to the plaintiff, in part because the escalator was in full compliance with all relevant safety codes and no safety devices existed which could have prevented this occurrence. (JC Penney Mem. of Law at unnumbered 2-3.) JC Penney also contends that the type of incident which occurred was not reasonably foreseeable, and that it did not know, nor should it have known, of the existence of the space between the moving handrail and the handrail inlet. (Id. at 5-6.)

JC Penney has a duty of reasonable care to keep its premises in a reasonably safe condition for the protection of all customers, including family members whose presence is reasonably foreseeable. Peralta v. Henriquez, 100 N.Y.2d 139, 143, 760 N.Y.S.2d 741 (N.Y. 2003) ("[w]henever the general public is invited into stores, office buildings and other places of public assembly, the owner is charged with the duty of providing the public with a reasonably safe

6

premises. . .") (citing Gallagher v. St. Raymond's Roman Catholic Church, 21 N.Y.2d 554, 557, 289 N.Y.S.2d 401 (N.Y. 1968)). This is typically a jury question. Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) ("Under New York law. . . decisions as to a lack of reasonable care and its nexus to a plaintiff's injury are quintessential jury questions. . . .").

JC Penney, as a department store selling children's clothing in a large mall, should reasonably expect young children, in the care of their parents or other adults, to visit its premises. Further, "children, wherever they go must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this and take precautions accordingly." Union P.R. Co. v. McDonald, 152 U. S. 262, 14 S.Ct. 619, 38 L. Ed. 434 (1894). Additionally, in the state of New York, an infant under four years of age is incapable as a matter of law of understanding danger, and accordingly, can not be found negligent nor be held responsible for her acts. Verni v. Johnson, 295 N.Y. 436, 438, 68 N.E.2d 431 (N.Y. 1946); Beekman Estate v. Midonick,, 252 N.Y.S. 2d 885, 44 Misc. 2d 11, 13 (N.Y. Sup. Ct. 1964).

JC Penney also argues that it did not breach its duty to the plaintiff because the escalator in question was "in full compliance with all applicable codes both at the time of its installation and up until the time of [the] occurrence." (JC Penney Mem. of Law at unnumbered 2-3.) However, state courts have held that while a defendant's compliance with state law or code "'is some evidence of the exercise of due care', it does not preclude a conclusion that [the defendant] was negligent." Sherman v. M. Lowenstein & Sons, Inc, 28 A.D.2d 922, 282 N.Y.S.2d 142, (N.Y.App. Div. 2d Dep't 1967) (citing Phillips v. Roux Labs., 286 A.D. 549, 551, 145 N.Y.S.2d 449 (N.Y. App. Div. 1st Dep't 1955); 2 Harper & James, The Law of Torts, § 17.6, p. 1014 (1956)). This is especially so where a statute or code prescribes certain minimum safety requirements, but it is

7

established custom and usage to provide additional safety devices. Carrion v. Eastern Elevator Co., 314 N.Y.S.2d 138, 139, 34 A.D.2d 1004, 1005 (N.Y. App. Div. 2d Dep't 1970).

In addition, while JC Penney argues that, at the time of the incident, no safety device existed which could have prevented the incident, plaintiff's expert report describes at least seven different patented devices, dating back to 1946, designed to prevent injury to body parts that become entrapped between the handrail and the handrail inlet on an escalator. (See Carrajat Report at unnumbered 2-3.) Additionally, Jacklin Ross stated in her deposition that she and her uncle returned to the escalator the day after the incident, and the open space where the plaintiff's hand was caught had been "fixed." (Ross Dep. at 21.) Ross stated that her uncle tried a few times to put a business card through the handrail inlet space, and that the business card would not go in. (Id.)

While evidence of alleged subsequent remedial measures is not admissible to prove negligence, culpable conduct, a need for warning or instruction, or a defect in a product or a product's design, such evidence is admissible to prove feasibility of precautionary measures if controverted. Rule 407, Fed. R. of Evid. See also Caprara v. Chrysler Corp., 52 N.Y.2d 114, 122, 436 N.Y.S.2d 251, 255 (N.Y. 1981) (discussing the admissibility of post-accident remedial measures in negligence suits). Here, the parties dispute the feasibility of fitting the escalator with a safety device which may have prevented the instant accident. As such, there are additional genuine issues of material fact in dispute, the resolution of which will likely give rise to questions governing the admissibility of evidence.

The plaintiff in this case was two years old at the time of the incident, and according to the plaintiff, was accompanied by her mother and properly holding onto the escalator guardrail when

the incident occurred. When viewed in a light most favorable to the plaintiff, as the non-moving party, a material question of facts exists with respect to whether JC Penney breached the duty owed to the infant plaintiff, whether JC Penney knew or should have known of the open space between the moving handrail and handrail inlet, and whether a safety device existed at the time of the incident which could have prevented the incident. For the foregoing reasons, defendant JC Penney's motion for summary judgment is denied.

IV. <u>Schindler's Motion for Summary Judgment against Plaintiff</u>

In Schindler's motion for summary judgment, it contends that it did not have a legal duty to the plaintiff. (O'Reilly Aff. in Support at 13-14.) In the alternative, Schindler argues that it did not breach a legal duty owed to the plaintiff because the escalator in question complied with the requirements of the applicable escalator safety code at the time of installation and at the time the alleged incident occurred. (<u>Id.</u> at 14-15.)

Whether a defendant owes a duty of care to the plaintiff is a legal question for the court to decide. <u>Fagan v. Amerisource Bergen Corp.</u>, 356 F. Supp. 2d 198, 206 (E.D.N.Y.2004) (citing <u>In re September 11 Litigation</u>, 280 F. Supp. 2d 279, 290 (S.D.N.Y.2003); <u>Palka v. Servicemaster Mgmt. Servs. Corp.</u>, 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 (N.Y. 1994)). "In order to determine the existence of a duty in New York, the court should consider and balance the following five factors: (1) 'the reasonable expectations of the parties and society generally;(2) the proliferation of claims; (3) the likelihood of unlimited or insurer-like liability; (4) disproportionate risk and reparation allocation; and (5) public policies affecting the expansion or limitation of new channels of liability.'" <u>Fagan v. AmerisourceBergen Corp.</u>, 356 F. Supp. 2d 198 (E.D.N.Y. 2004) (citing <u>Palka v. Servicemaster Management Services Corp.</u>, 83 N.Y.2d 579, 586, 611 N.Y.S.2d 817, 634 N.E.2d 189 (N.Y. 1984); <u>532 Madison Ave. Gourmet Foods, Inc. v.</u>

Finlandia Center, Inc., 96 N.Y.2d 280, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (N.Y. 2001) (reiterating the five factor balancing test); In re September 11 Litigation, 280 F. Supp. 2d at 290 (considering the five factors set forth in Palka to find the existence of a duty)).

To the extent that elevator and escalator maintenance companies perform analogous functions, it is well settled that an escalator maintenance company owes a duty of care to members of the public. See Alsaydi v. GSL Enterprises, Inc., 656 N.Y.S.2d 691, 692, 238 A.D.2d 533, 534 (N.Y. App. Div. 2d Dep't 1997) (" It is well settled that an elevator maintenance company owes a duty of care to members of the public, and may be liable for failing to correct conditions of which it is aware, or failing to use reasonable care to 'discover and correct a condition which it ought to have found.'") (citing Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 559, 347 N.Y.S.2d 22, 300 N.E.2d 403 (N.Y. 1973)). Accordingly, based on the consideration of the five factors listed supra and Schindler's status in this case as the escalator maintenance contractor, I find that defendant Schindler owed a duty of care to the plaintiff.

Schindler argues inter alia that it did not breach a legal duty owed to the plaintiff because the escalator in question complied with the requirements of the applicable escalator safety code at the time of installation and at the time the alleged incident occurred. (O'Reilly Aff. in Support at 14-15.) However, as discussed supra, state courts have held that while a defendant's compliance with state law or code "'is some evidence of the exercise of due care', it does not preclude a conclusion that [the defendant] was negligent." Sherman v. M. Lowenstein & Sons, Inc., 28 A.D.2d 922, 282 N.Y.S.2d 142 (N.Y. App. Div. 2d Dep't 1967) ( citing Phillips v. Roux Labs, 286 A.D. 549, 551, 145 N.Y.S.2d 449 (N.Y. App. Div. 1st Dep't 1955); 2 Harper & James, The Law of Torts, § 17.6, p. 1014 (1956)). See also Lugo by Lopez v. LJN Toys, Ltd., 146 A.D.2d 168, 539 N.Y.S.2d 922 (N.Y. App. Div. 1st Dep't 1989), aff'd 75 N.Y.2d 850, 552 N.E.2d 162,

552 N.Y.S.2d 914 (N.Y. 1990). Despite a defendant's compliance with the prescribed minimum standards as set forth in codes and statutes, negligence may still be established where a plaintiff can show that it was established custom and usage to provide additional safety devices, and that therefore, the failure to provide such devices demonstrated a deviation from ordinary care. See Carrion v. Eastern Elevator Co., 314 N.Y.S.2d 138, 139, 34 A.D.2d 1004, 1005 (N.Y. App. Div. 2d Dep't 1970).

Accordingly, genuine issues of material fact exist with regard to whether defendant Schindler breached its duty of care to the infant plaintiff, and Schindler's motion for summary judgment is denied.

V.	JC Penney's Motion for Summary Judgment Against Schindler

In its answer to plaintiff's complaint, defendant JC Penney states a cross-claim for contribution as against co-defendant Schindler, as well as a cross-claim for common law and contractual indemnity as against co-defendant Schindler. (JC Penney's Verified Answer with Cross-Claim, at unnumbered 3-4.) JC Penney seeks summary judgment on its cross-claims because Schindler was "charged with continued maintenance" of the escalator. (JC Penney Mem. Of Law at unnumbered 6-7.) Schindler opposes JC Penney's motion, and argues that neither statutory authority nor the contractual relationship between Schindler and JC Penney confers the right to indemnification upon JC Penney. (Schindler Opp'n to Indemnification at 3-4.)

JC Penney Company, Inc. and Westinghouse Electric Corporation, Schindler's predecessor, entered into a contract on September 20, 1961. (See Stairway Protective Maintenance Agreement between JC Penney Company, Inc. and Westinghouse Electric Corporation (the "Contract"), dated September 20, 1961.) The Contract provides that, inter alia,

11

Schindler employees "will use all reasonable care to maintain the [escalators] in proper and safe operating condition," and that Schindler "will periodically examine all safety devices and governors." (Contract, ¶ 1, ¶ 4.) The Contract also states, however, that Schindler "shall not be under any obligation hereunder to make any renewals or repairs except those incidental to the operation of the machinery, apparatus or balustrades, and that [Schindler] is not required under this contract to make renewals or repairs necessitated by reason of negligence, accident, or misuse of machinery, apparatus or balustrades, or due to any other similar or dissimilar causes beyond its control." (Id. ¶ 9.) The contract further species that Schindler "shall not be required to make safety tests, nor to install new attachments on the stairways which may be recommended or directed by Insurance Companies, or Government, State, Municipal or other authorities." (Id.) The contract also states that JC Penney's "own responsibility for accidents to persons or properties while riding" on the escalator is not affected by the agreement. (Id. at ¶ 11.)

A "contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." In re Holocaust Victim Assets Litigation, 282 F.3d 103, 108 (2d Cir. 2002) (citing Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138-139 (2d Cir. 2000) (internal quotation marks omitted) (applying New York law)). "Under New York law, if the meaning of a given contract provision is found to be ambiguous, a court is empowered to consider extrinsic evidence." In re Holocaust Victim Assets Litigation, 282 F.3d 103, 108 (2d Cir. 2002) (citing Stage Club Corp. v. W. Realty Co., 622 N.Y.S.2d 948, 950-951, 212 A.D.2d 458 (N.Y. App. Div. 1st Dep't 1995)).

Here, the language of the Contract is ambiguous on the issue of the division of responsibilities between the co-defendants as it relates to the subject escalator. Accordingly, I

12

conclude that due to the ambiguity of the language in the Contract , an evidentiary hearing is necessary to determine the intent of the contracting parties and the scope of each co-defendant's obligations with regard to the escalator in question. For the foregoing reasons, JC Penney's motion for summary judgment on its cross-claim against co-defendant Schindler is denied.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment against the plaintiff by co-defendants JC Penney and Schindler are denied. Furthermore, JC Penney's motion for summary judgment on its cross-claim against co-defendant Schindler is denied. Jury selection is scheduled for October 24, 2005 at 9:30 a.m.. The trial will commence immediately thereafer. An evidentiary hearing on the co-defendants' contractual obligations with respect to the subject escalator will occur outside the presence of the jury during the trial.

So Ordered:

Dated: Central Islip, New York
      June 21, 2005

                                  /s/ E. Thomas Boyle
                                  E. Thomas Boyle
                                  United States Magistrate Judge